IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LOUISE TRAUMA CENTER LLC, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-23-1561 |
| UNITED STATES CITIZENSHIP & IMMIGRATION SERVICES, | * | |
| | * | |
| *Defendant*. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In January of 2021, Plaintiff Louise Trauma Center LLC (the "Center") filed four Freedom of Information Act ("FOIA") requests with the Defendant United States Citizenship & Immigration Services ("USCIS"). After USCIS "failed to respond," the Center initiated the instant litigation, filing a four-count complaint under FOIA on June 9, 2023. (ECF No. 1.)[1] On December 23, 2023, the parties filed a "Joint Motion to Re-Set Deadlines" (ECF No. 15), wherein the parties indicated that this FOIA case had been resolved, except for the issue of attorney's fees and costs. On December 28, 2023, the Court granted the parties' joint motion, ordering Plaintiff to file either a notice of dismissal or a motion for attorney's fees and costs by January 22, 2024. And so, this Court now considers Plaintiff's Motion for an Award of Attorneys Fees and Costs (the "Motion") (ECF No. 17), wherein Plaintiff moves for $43,400 in attorney's fees and $402 in costs. USCIS filed a response in opposition (ECF No. 18),

---

[1] For clarity, this Memorandum Opinion cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated. Likewise, this Memorandum Opinion cites to the ECF generated document number, rather than the exhibit number provided by the parties' various submissions.

1

requesting that this Court deny Plaintiff's Motion or, in the alternative, award attorney's fees at a significantly reduced hourly rate and without awarding any attorney's fees for non-compensable and insufficiently descriptive time entries, in an amount not to exceed $16,625. The Center replied (ECF No. 19), representing that it had done additional work and was now requesting $54,560 in attorney's fees and $402 in costs. On August 21, 2024, USCIS filed correspondence addressed to the Undersigned Judge (ECF No. 20), wherein USCIS notified the Court of District Court Judge Dabney L. Friedrich of the United States District Court for the District of Columbia's order related to the Center's motion for attorneys' fees pending in *Louise Trauma Center LLC v. Mayorkas et al.*, 1:20-cv-02348-DLF (D.D.C. July 29, 2024), as well as Plaintiff's response to that minute order, which was included as an exhibit to USCIS's correspondence (ECF No. 20-1). USCIS notes that Judge Friedrich's minute order regarded many of the same concerns that USCIS raised in its opposition in the instant case and assails the Center's response as "partially responsive" to Judge Friedrich's inquiry. (ECF No. 20 at 1–3.)

The parties' submissions have been reviewed and no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the following reasons, Plaintiff's Motion for an Award of Attorneys Fees and Costs (ECF No. 17) is GRANTED IN PART and DENIED IN PART. While the Court finds that the Center is entitled to and eligible for fees, the Court finds that the requested fee award is not reasonable because Plaintiff's requested hourly rate—$620/hour—is unreasonable and the number of hours billed—88 hours—is unreasonable. At bottom, the Court finds that Center is entitled to $21,090 in fees and $402 in costs.

**BACKGROUND**

Plaintiff Louise Trauma Center is "a nonprofit organization dedicated to raising awareness about immigrant women who have suffered from gender-based violence" obtain asylum in the United States. (ECF No. 1 ¶ 4.) On January 5, 2021, the Center requested from Defendant United States Citizenship & Immigration Services (1) "records relating to distance training given to newly-hired asylum officers from January 1, 2020 to the present" ("distance learning request" or "first cause of action") (*id.* ¶ 7) and "records relating to training given to Asylum Officers at the Chicago Asylum office from November 1, 2020 to the present" ("training request" or "fourth cause of action") (*id.* ¶ 37). On January 15, 2021, the Center requested from USCIS (3) "all emails, and their attachments, sent from Asylum Headquarters to the Arlington Asylum Office from July 1, 2020 to the present" ("emails request" or "second cause of action") (*id.* ¶ 16) and "records 'relating to USCIS FOIA case evaluation forms and other documents that track and evaluate the performance of FOIA employees from July 1, 2020 to the present" ("evaluation forms request" or "fourth cause of action") (*id.* ¶ 27). After USCIS failed to respond within the Freedom of Information Act's time limits pursuant to 5 U.S.C. § 552(a), the Center filed its four-count Complaint on June 9, 2023. On July 13, 2023, USCIS filed its Answer (ECF No. 9).

On August 1, 2023, the Court held a telephone conference with the parties, wherein the parties agreed that USCIS shall produce the identified 1,500 pages related to the first cause of action by September 1, 2023 and shall produce the documents related to the fourth cause of action by September 15, 2023; and that no deadline would be set for the second and third causes of action, which this Court noted "must be narrowed." (ECF No. 13.)

3

On November 27, 2023, the parties submitted a joint status report, indicating (1) that USCIS had released pages related to the first, third, and fourth causes of actions; (2) that Plaintiff's review of released pages related to the first and fourth causes of action was ongoing; (3) that Plaintiff's review of released pages related to the third cause of action was complete and that "[a]side from an award of costs and fees, Plaintiff ha[d] no further concerns"; and (4) that USCIS had pledged to release pages related to the second cause of action narrowed to one year by November 30, 2023. (ECF No. 14.)

On December 23, 2023, the parties filed a "Joint Motion to Re-Set Deadlines" (ECF No. 15), wherein the parties indicated that this FOIA case had been resolved, except for the issue of attorney's fees and costs. On December 28, 2023, the Court granted the parties' joint motion, ordering Plaintiff to file either a notice of dismissal or a motion for attorney's fees and costs by January 22, 2024.

On January 19, 2024, the Center filed the instant Motion for an Award of Attorneys Fees and Costs (ECF No. 17), wherein Plaintiff moves for $43,400 in attorney's fees and $402 in costs. USCIS filed a response in opposition (ECF No. 18), requesting that this Court deny Plaintiff's Motion or, in the alternative, award attorney's fees at a significantly reduced hourly rate and without awarding any attorney's fees for non-compensable and insufficiently descriptive time entries, in an amount not to exceed $16,625. The Center replied (ECF No. 19), representing that it had done additional work and was now requesting $54,560 in attorney's fees and $402 in costs. On August 21, 2024, USCIS filed correspondence addressed to the Undersigned Judge (ECF No. 20), wherein USCIS notified the Court of Judge Friedrich of the United States District Court for the District of Columbia's order related to the Center's

4

motion for attorneys' fees pending in *Louise Trauma Center LLC v. Mayorkas et al.*, 1:20-cv-02348-DLF (D.D.C. July 29, 2024), as well as Plaintiff's response to that minute order, which was included as an exhibit to USCIS's correspondence (ECF No. 20-1).  USCIS notes that Judge Friedrich's minute order regarded many of the same concerns that USCIS raised in its opposition in the instant case and assails the Center's response as "partially responsive" to Judge Friedrich's inquiry.  (ECF No. 20 at 1–3.)  First, USCIS contends that "Plaintiff's submission does not demonstrate that it operates as a non-profit, . . . instead, Plaintiff makes clear that it is a limited liability corporation."  (*Id.* at 2.)  USCIS further contends that "Plaintiff's submission does not demonstrate that it disseminates information, beyond 'merely post[ing] records on its website, with no "analysis on the law," and does not include any educational material.'"  (*Id.* at 2–3 (quoting ECF No. 18).)  Lastly, USCIS contends that "Plaintiff's submission reinforces that 'Plaintiff or counsel appear to have a "personal incentive" in using the FOIA as a tool to obtain compensation for counsel.'"  (*Id.* at 3 (quoting ECF No. 18).)

**STANDARD OF REVIEW**

The Freedom of Information Act permits courts to assess "against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  Importantly, an "award of attorney's fees is not automatic, but is to be made where doing so will encourage fulfillment of the purposes of FOIA."  *Nix v. United States*, 572 F.2d 998, 1007 (4th Cir. 1978).

The majority of courts evaluating FOIA attorney's fees disputes utilize a two-step

analysis to determine whether an award of attorney's fees is warranted. First, it must be determined whether the plaintiff is eligible to receive attorney's fees and costs, that is, whether the plaintiff substantially prevailed within the meaning of the statute. *Havemann v. Colvin*, 537 F.App'x 142, 149 (4th Cir. 2013) (quoting *Long v. U.S. Internal Revenue Servs.*, 932 F.2d 1309, 1313 (9th Cir. 1991)). The 2007 amendments to FOIA expanded on the meaning of "substantially prevailed," adding clause (ii), which provides that "a complainant has substantially prevailed if the complainant has obtained relief through either—(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). Prior to that amendment, the United States Court of Appeals for the Fourth Circuit previously explained that "[t]o prove that he has substantially prevailed, [a plaintiff] must establish that his [FOIA] claim was reasonably necessary *and* substantially caused the requested records to be released." *Reinbold v. Evers*, 187 F.3d 348, 363 (4th Cir. 1999) (emphasis in original). "[I]n the absence of a final judgment in his favor, [whether the plaintiff substantially prevailed] is a question of causation—the lawsuit must have resulted in the release of records that would not otherwise have been released." *Id.*

If a determination is made that a plaintiff has substantially prevailed, the court must then evaluate four factors to decide whether he is entitled to an award: (1) the benefit to the public, if any, derived from the case; (2) the benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in the law. *Reinbold*, 187 F.3d at 362 n.16. "The decision whether to award fees is left to the discretion of the district court." *Morales v. Pension Ben. Guar.*

*Corp.*, No. L-10-1167, 2012 U.S. Dist. LEXIS 9101, 2012 WL 253407, at *8 (D. Md. Jan. 26, 2012).

If the Court determines that a party is eligible and entitled to an award of attorney's fees, the Court must assess whether the amount sought is appropriate in the given circumstances by utilizing the well-settled lodestar methodology, *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002), which is the product of the number of hours reasonably expended on the litigation times a reasonable hourly rate. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). "To determine a reasonable hourly rate, the lodestar method looks to the prevailing market rates in the community where the court sits." *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988). In the District of Maryland, attorney's fees are presumed in line with those prevailing in the community if they abide by the Guidelines Regarding Hourly Rates contained in Appendix B of the Local Rules.[2] "[T]he burden rests with the fee applicant to establish the reasonableness of a requested rate." *Robinson v. Equifax Info. Servs.*, LLC, 560 F.3d 235, 244 (4th Cir. 2009) (quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). In assessing reasonableness, the Fourth Circuit has instructed district courts to consider what are known as the *Johnson*[3] factors, which are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for

---

[2] The Local Rules provide non-binding guidelines regarding reasonable hourly rates that vary depending on how long an attorney has been admitted to the bar. *See* Local Rules Appendix B.3 (D. Md. 2023). The Local Rules put forth the following guidelines: $150–225 for lawyers admitted to the bar for less than five years; $165–300 for lawyers admitted for five to eight years; $225–350 for lawyers admitted for nine to fourteen years; $275–425 for lawyers admitted for fifteen to nineteen years; and $300–475 for lawyers admitted for twenty years or more. *Id.* The rate for paralegals and law clerks is $95–150. *Id.*

[3] In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), a Title VII case, the Fifth Circuit listed twelve factors that a federal district court judge must consider in awarding reasonable fees. *Id.* at 717–19.

like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases. *McAfee*, 738 F.3d at 88 n.5 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).

## ANALYSIS

Applying the FOIA fees framework to this case, the Court concludes that the Center is "eligible" for attorney's fees because it substantially prevailed in the litigation. Further, the Center is "entitled" to fees because the public derived benefit from the requested information and USCIS lacked a colorable basis for withholding the information prior to the onset of this litigation. However, the Court finds that the requested fee award is not reasonable because Plaintiff's hourly rate and the number of hours billed are both unreasonable. As further explained below, Plaintiff's requested hourly rate of $620 is inconsistent with the Guidelines Regarding Hourly Rates set forth Appendix B of the Local Rules, and the Center has produced absolutely no evidence other than Mr. Cleveland's Declaration to support the reasonableness of its requested rate. With respect to the hours billed, the Center's billing records—which are insufficiently descriptive as to the tasks performed—reveal inefficiencies and a lack of billing judgment. To account for this, the Court will adjust Plaintiff's hourly rate to $475 and award fees of 50% of the claimed hours—that is, 44.4 hours.

## I. Attorney's Fees

### A. Eligibility for Attorney's Fees

The Court must first consider whether the Center is eligible for attorney's fees under FOIA—i.e., whether Plaintiff "substantially prevailed." Under FOIA, a party substantially prevails if it has obtained relief through a judicial order, as here. *See* U.S.C. § 552(a)(4)(E)(ii). USCIS does not dispute the Center's eligibility for attorney's fees. (*See* ECF No. 18-1 at 8.)

### B. Entitlement to Attorney's Fees

Having determined that the Center substantially prevailed, the Court turns to evaluating the following four factors to decide whether the Center is entitled to an award: (1) the benefit to the public, if any, derived from the case; (2) the benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in the law. *Reinbold*, 187 F.3d at 362 n.16.

With respect to the first factor—whether the public derived benefit from the Center's request—attorney's fees are appropriate where a FOIA response helps protect the public's interest in the fair and just administration of justice. *See Jarno v. Dep't of Homeland Sec.*, 365 F. Supp. 2d 733, 739 (E.D. Va. 2005). But importantly, the benefit to the public must be specific and concrete because "[i]t is doubtless true . . . that the successful FOIA plaintiff always acts in some degree for the benefit of the public." *Sabalos v. Regan*, 520 F. Supp. 1069, 1072 (E.D. Va. 1981) (internal quotation marks and citations omitted). In evaluating this factor, "[t]he degree of dissemination to the press and public are recognized as important factors in determining whether a public benefit exists." *Jarno*, 365 F. Supp. 2d at 738. Thus, analysis under this factor "requires consideration of both the effect of the litigation for which fees are

9

requested and the potential public value of the information sought[.]" *Davy v. Cent. Intel. Agency*, 550 F.3d 1155, 1159 (D.C. Cir. 2008).  Here, the first factor—the public benefit of the documents concerning the asylum process—weighs in favor of entitling Plaintiff to an award of attorney's fees.  Indeed, USCIS concedes as much.

Turning to the second and third factors, "which are often considered together," these factors assess whether a "plaintiff has sufficient private incentive to seek disclosure without attorney's fees." *Davy*, 550 F.3d at 1160 (internal quotation marks and citations omitted).  In other words, these factors evaluate whether the requestor would be incentivized to sue for the records absent fee shifting because they already have a strong commercial or private interest in obtaining the records.  *Id.* at 1160.  The second factor considers whether the party requesting fees was "indigent or a non-profit public group and not a large corporate interest." *Jarno*, 365 F. Supp. 2d at 739. The third factor, meanwhile, evaluates the "nature of the complainant's interest in the records sought." *Id.* at 740.

The Center contends that it meets these factors because it is a "nonprofit" and "[p]reviously unknown government information has been disclosed."  (ECF No. 17 at 12.) USCIS challenges the veracity of the Center's self-characterization as a non-profit, (ECF No. 18-1 at 10), submitting a screenshot of the Center's website from February 2, 2024 where the Center does not list itself as a non-profit,[4] (ECF No. 18-2), and noting that a recent review of

---

[4] The Center appears to have made modifications to its website since USCIS's screenshot. *Compare Home*, LOUISE TRAUMA CENTER, available at https://louisetrauma.weebly.com/ (last accessed Aug. 20, 2024) ("The Louise Trauma Center (LTC), founded in 2017, is dedicated to raising awareness about immigrant women who have suffered from gender-based violence such as female genital mutilation (FGM), rape, domestic violence, and forced marriage.  This site aims to help these women win asylum.  The site will feature new country conditions, asylum officer trainings, reports, and analysis on the law surrounding these issues.  We will also highlight the long-term damage caused by these types of persecution. *We are a non-profit organization*." (emphasis added)) *with* (ECF No. 18-2 ("The Louise Trauma Center (LTC) is dedicated to raising awareness about

the Center's status on the Internal Revenue Service's website revealed that Plaintiff is not registered as a non-profit. (ECF No. 18-3.) *See Find Your Organization*, DC.GOV, available at https://corponline.dcra.dc.gov/Home.aspx/ProcessRequest (last accessed Aug. 20, 2024). USCIS further questions whether counsel actually represents Plaintiff, (ECF No. 18-1 at 10–11), noting that Plaintiff's counsel—David L. Cleveland—shares the same last name as the Center's Director—Ella Cleveland, Ph.D.—and the address listed for the organization is a residential address that appears to be the residence of both Plaintiff's counsel and the Center's Director.[5] (ECF No. 18-2.) Defendant further contends that Plaintiff's Motion is "silent as to the [Center]'s mission," fails to explain "what, if any, benefit is gained through the document requests," and "fails to plausibly explain the nature of its interests in the documents." (ECF No. 18-1 at 12.) In support of this contention, USCIS points to the Center's website, which Defendant describes as "barren for any brief, report, or analysis on the law" with respect to documents received through FOIA requests, "save one report from 2014." (*Id.* at 12–13.) In brief, USCIS contends that these facts, taken as a whole, give credence to the conclusion that the Center's motivations are "personal and frivolous in nature," as Plaintiff "has no real interest [in] seek[ing] the information," but rather makes these requests on behalf of the Center as a means of obtaining compensation through statutorily mandated attorney's fees. (ECF

---

immigrant women who have suffered from gender-based violence such as female genital mutilation (FGM), rape, domestic violence, and forced marriage. This site aims to help these women win asylum. The site will feature new asylum cases, briefs, reports, and analysis on the law surrounding these issues. We will also highlight the long-term damage caused by these types of persecution.")). It further appears that Louise Trauma Center is registered as a limited liability corporation with the D.C. government.

[5] Curiously, the Center's website no longer lists Ella Cleveland as its Director, *see Home*, LOUISE TRAUMA CENTER, available at https://louisetrauma.weebly.com/ (last accessed Aug. 20, 2024) (listing "Emma Lazarus" as its Director Emeritus), though the registration with the D.C. government still lists Ella Cleveland as the LLC's Registered Agent. *See Find Your Organization*, DC.GOV, available at https://corponline.dcra.dc.gov/Home.aspx/ProcessRequest (last accessed Aug. 20, 2024).

No. 18-1 at 11.)

USCIS recently filed correspondence addressed to the Undersigned Judge (ECF No. 20) regarding Judge Friedrich of the United States District Court for the District of Columbia's order related to the Center's motion for attorneys' fees pending in *Louise Trauma Center LLC v. Mayorkas et al.*, 1:20-cv-02348-DLF (D.D.C. July 29, 2024), as well as Plaintiff's response to Judge Friedrich's minute order (ECF No. 20-1).  According to USCIS, Judge Friedrich's minute order and Plaintiff's response further supports the Defendant's position with respect to the third and fourth factors.  First, USCIS contends that "Plaintiff's submission does not demonstrate that it operates as a non-profit, . . . instead, Plaintiff makes clear that it is a limited liability corporation."  (ECF No. 20 at 2.)  USCIS points out that the Center provided an employment identification number ("EIN") in its filing in the District of Columbia, "a search by the EIN does not return a registered non-profit with the Internal Revenue Service" and the Center did not seek an EIN until 2023—two years after it submitted the FOIA requests at issue in this case.  (*Id.*)  USCIS emphasizes that the Center could have registered as a non-profit corporation under D.C. Code, but opted to register as a limited liability corporation.  (*Id.*) USCIS further contends that "Plaintiff's submission does not demonstrate that it disseminates information, beyond 'merely post[ing] records on its website, with no "analysis on the law," and does not include any educational material.'"  (*Id.* at 2–3 (quoting ECF No. 18).)  Lastly, USCIS contends that "Plaintiff's submission reinforces that 'Plaintiff or counsel appear to have a "personal incentive" in using the FOIA as a tool to obtain compensation for counsel.'" (*Id.* at 3 (quoting ECF No. 18).)  "[R]egardless of its founder's worthy goals, whether Plaintiff's counsel has co-opted Plaintiff's purported separate and distinct status in order to seek

attorney's fees to which he would not be entitled if he sought the records and then brought litigation in his own name." (*Id.* at 3.)

"[T]o suffice under the second and third factors, a motive need not be strictly commercial; any private interest will do." *Tax Analysts v. U.S. Dep't of Justice*, 995 F.2d 1092, 1095 (D.C. Cir. 1992) (citing *La Salle Extension Univ. v. Fed. Trade Comm'n*, 627 F.2d 481, 484 (D.C. Cir. 1980)). The Court shares USCIS's concerns that Plaintiff's counsel appears to have a private interest in obtaining attorney's fees from FOIA litigation pursued on behalf of an LLC registered to an individual who shares counsel's last name and to an address that appears to be affiliated with Plaintiff's counsel. Troublingly, Plaintiff puts forth little effort to quell these concerns. (*See* ECF No. 19 at 9–17.) Still, and while acknowledging that the Center does not appear to be very effective at sharing the information it receives through its numerous FOIA requests, there is at least some public interest in the Center's pursuit and release of the records. Weighing the limited benefit of the Center's minimal dissemination of the information it receives with the public against the apparent private interest, the Court finds that the second and third factors weigh against a fee award.

The final factor considers whether the government's withholding of the records had a reasonable basis in the law. *Reinbold*, 187 F.3d at 362 n.16. While courts have explained that this factor is not automatically satisfied by the fact that an agency failed to produce documents within the statutory timeframe, *Morley v. Cent. Intel. Agency*, 894 F.3d 389, 393 (D.C. Cir. 2018), a lengthy, unexplained delay has been held to satisfy it, *Davy*, 550 F.3d at 1163. While USCIS notes that the Department of Homeland Security—the parent agency of USCIS—receives and responds to more FOIA requests each year than any other U.S. Federal Agency, (*see* ECF No.

13

18-1 at 8 n.1 (citing *Reports*, FOIA.GOV, available at https://www.foia.gov/reports.html)), USCIS concedes that this factor is satisfied. This Court agrees. The Center requested the subject papers from USCIS in January 2021. USCIS failed to respond within the Freedom of Information Act's time limits pursuant to 5 U.S.C. § 552(a), and approximately 29 months after the Center made the subject FOIA requests, the Center initiated the instant litigation. Accordingly, the fourth factor weighs in favor of awarding fees.

While this Court is directed to weigh the above four factors, the sifting of those factors over the facts of the case is a matter of district court discretion. *Tax Analysts*, 965 F.2d at 1094. None of the four entitlement factors "is dispositive." *Davy*, 550 F.3d at 1159. The second and third factors taken together, weigh against an award of attorney's fees, while the first and fourth factors weighs in favor of an award of attorney's fees. While perhaps a closer question than presented by many disputes over attorney's fees, the Court, in its discretion, finds that the factors are equally balanced. Accordingly, the Court finds that the Center is both eligible and entitled to attorney's fees under FOIA's fee-shifting provision.

### C. The Lodestar Calculation

Having determined that the Center is eligible and entitled to an award of attorney's fees, the Court must exercise its discretion to determine the reasonableness of the fees requested, utilizing the lodestar method—the product of the number of hours reasonably expended on the litigation times a reasonable hourly rate. *McAfee*, 738 F.3d at 88. "To determine a reasonable hourly rate, the lodestar method looks to the prevailing market rates in the community where the court sits." *Nat'l Wildlife Fed'n*, 859 F.2d at 317. In the District of Maryland, attorney's fees are presumed in line with those prevailing in the community if

14

they abide by the Guidelines Regarding Hourly Rates contained in Appendix B of the Local Rules. "[T]he burden rests with the fee applicant to establish the reasonableness of a requested rate." *Robinson*, 560 F.3d at 244 (quoting *Plyler*, 902 F.2d at 277). In assessing reasonableness, the Fourth Circuit has instructed district courts to consider the *Johnson* factors, which are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases. *McAfee*, 738 F.3d at 88 n.5 (citing *Barber*, 577 F.2d at 226 n.28). There is a "'strong presumption' that the lodestar number represents a reasonable attorney's fee," which "can only be overcome 'in those rare circumstances where the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *Id.* at 88–89 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 548 (2010)). The fee applicant bears the burden of establishing any upward adjustment of the lodestar figure. *Perdue*, 559 U.S. at 553.

The Center requests $43,400 in attorney's fees for this litigation, as well as $402 in costs. (ECF No. 17.) It requests an additional $11,160 in fees for work on a reply related to this Motion. (ECF No. 19.) USCIS objects to both the requested hourly rate and the number of hours billed. (ECF No. 18; *see also* ECF No. 20.) The Court considers each variable before

calculating the final award.

1. **Reasonable Hourly Rate**

"To determine a reasonable hourly rate, the lodestar method looks to the prevailing market rates in the community where the court sits." *Nat'l Wildlife Fed'n*, 859 F.2d at 317. Relevant to the instant consideration, the Guidelines Regarding Hourly Rates set forth Appendix B of the Local Rules provide a rate of $300–475 for attorneys admitted to the bar for twenty (20) years or more. However, through his Motion for an Award of Attorneys Fees and Costs (ECF No. 17), counsel for the Center, David L. Cleveland complains that the guidelines were last updated in 2014 and contends "$620 per hour is reasonable for counsel for plaintiff in this case." (*Id.* at 13.)

"[T]he burden rests with the fee applicant to establish the reasonableness of a requested rate." *Robinson*, 560 F.3d at 244 (quoting *Plyler*, 902 F.2d at 277). To support his requested hourly rate, Mr. Cleveland provided a Declaration, attached as Exhibit B to the Motion (ECF No. 17-2). Therein, Mr. Cleveland states: "I graduated from law school more than 40 years ago. I should be paid at the rate of $620 an hour." (*Id.* ¶ 23.) He further provides hourly rates awarded in several FOIA cases in the District of Columbia. (*Id.* ¶¶ 10 ($568/hour awarded in 2016), 12 ($581/hour awarded in 2017), 17 ($627/hour in 2023)).) However, the rates awarded to Mr. Cleveland in the District of Columbia do not address the issue presently before this Court—"prevailing market rates in the community where the court sits"—i.e., this District. *Nat'l Wildlife Fed'n*, 859 F.2d at 317.

In addition to his Declaration, the Center's Motion also points to several matrices, including the United States Attorney's Office for the District of Columbia, Civil Division's

16

"Fitzpatrick Matrix," attached as Exhibit D to Plaintiff's Motion (ECF No. 17-6), the LSI *Laffey* Matrix, which also pertains to hourly rates of litigation attorneys in Washington, D.C., attached as Exhibit E (ECF No. 17-8), and the Community Legal Services Matrix of Philadelphia for 2014, attached as Exhibit F (ECF No. 17-8). Like the rates awarded to Mr. Cleveland for FOIA litigation in the District of Columbia, these various matrices do not address the issue of "prevailing market rates in the community where the court sits." *Nat'l Wildlife Fed'n*, 859 F.2d at 317.

To be sure, the Center has cited to three cases from this District where this Court awarded fees of $625. (ECF No. 17 at 18 (citing *Hernandez v. Nelson Precast Prods., LLC*, No. 21-cv-02814-LKG, 2023 U.S. Dist. LEXIS 192073, 2023 WL 7089919 (D. Md. Oct. 26, 2023); *Morales v. LS Carpentry LLC*, No. DKC 22-2507, 2023 U.S. Dist. LEXIS 179597, 2023 WL 6517710 (D. Md. Oct. 5, 2023); *Melgar v. CCC USA LLC*, No. DLB-22-0283, 2023 U.S. Dist. LEXIS 174938, 2023 WL 6381438 (D. Md. Sep. 29, 2023))).) However, these cases were all brought under the Fair Labor Standards Act and do not support the hourly rate sought by Plaintiff in the instant case. The parties in *Hernandez* agreed to the hourly rate of $625. The *Morales* request for attorney's fees was unopposed. Similarly, the motion for attorney's fees in *Melgar* was unopposed, as the defendant never defended the action.

Here, the Center has produced absolutely no evidence other than Mr. Cleveland's Declaration to support the reasonableness of its requested rate. Accordingly, the Court will award hourly rates in the amount set forth at the high end of Appendix B of the Local Rules—$475 an hour.

17

### 2. Reasonableness of Hours Billed

The Court next considers the reasonableness of hours billed. Through its Motion, counsel for the Center claims to have spent 94 hours in this case, but "[e]xercising billing judgment, counsel reduces his hours from 94 to 70 hours." (ECF No. 17 at 14–16.) In response to USCIS's opposition, counsel for the Center submits that he "has now done 18.8 more hours of work"—that is, Mr. Cleveland did 18.8 more hours of work "preparing his reply." (ECF No. 19 at 1, 20.) He contends he should now be compensated for 88 hours of work. (*Id.*) USCIS contends that Plaintiff's billing records (1) contain considerable evidence of needless and/or duplicative work (ECF No. 18-1 at 18–21) and (2) are insufficiently descriptive (*id.* at 21–23).

The Court first notes that the Center's billing records are difficult to decipher. (*See* ECF Nos. 17-3, 17-4, 17-5, 19-1.) USCIS points the Court's attention to several troubling entries. (ECF No. 18-1 at 18–21.) For example, on June 9, 2023 billed over 5 hours for familiarizing himself with the Court's website and ECF rules and for difficulties experienced operating ECF.[6] (ECF No. 17-3 at 2.) (*Id.*) Throughout his billing records, counsel request fees for review and organization of "entire file." (*See generally* ECF Nos. 17-3, 17-4, 17-5.) Perhaps most troubling is that Mr. Cleveland devoted approximately 28 hours to preparing his motion for attorney's fees and costs, (*id.*)—i.e., nearly 40 percent of his billed time submitted

---

[6] The Court notes that several of Mr. Cleveland's billed hours should not have been included in his submission for attorney's fees, as "in this circuit . . . purely clerical tasks are ordinarily part of a law office's overhead, (which is covered in the hourly rate), [and] they should not be compensated for at all." *Two Men & A Truck/Int'l, Inc. v. A Mover, Inc.*, 128 F. Supp. 3d 919, 929 (E.D. Va. 2015) (citing cases); *see also Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10 (noting that "purely clerical or secretarial tasks should not be billed at a paralegal rate"). Examples of clerical tasks include: filing documents with the court, issuing summonses, scanning and mailing documents, reviewing files for information, printing pleadings, organizing documents, creating notebooks or files, assembling binders, emailing documents, and making logistical telephone calls. *Two Men & A Truck/Int'l, Inc.*, 128 F. Supp. 3d at 929–30 (citing cases).

18

with his motion. Through his reply, Mr. Cleveland represents that he billed 18.8 more hours of work "preparing his reply." (ECF No. 19 at 1, 20.) With that updated request, the time spent on the instant motion alone amounts to 53 percent of Mr. Cleveland's billed time on this matter.

Indeed, the Center's billing records reveal inefficiencies and a lack of billing judgment. At bottom, the Court finds that counsel for the Center spent too much time on the case, and certainly spent too much time on the instant motion. "[T]rial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "The essential goal . . . is to do rough justice, not achieve auditing perfection." *Id.* Thus, the Court "may use estimates in calculating and allocating an attorney's time." *Id.* In other words, the Court "may attempt to identify specific hours that should be eliminated" or "simply reduce the award to account for" overbilling. *Hensley*, 461 U.S. at 436–37. To account for overbilling, the Court will reduce Plaintiff's claimed hours by 25%.

The Center's billing records are also insufficiently descriptive as to the tasks performed. For example, throughout the Center's billing records, counsel bills time for tasks such as "commenting," "double checking" "preparing," "R&R," "reading," "re-reading," "research," "reviewing," "revising," "studying," etc. (*See generally* ECF Nos. 17-3, 17-4, 17-5.) Mr. Cleveland infrequently elaborates any further. In general, the Center's billing records fail to provide adequately specific descriptions as to the tasks performed, inhibiting the Court's determination of reasonableness. *Brown v. Mountainview Cutters, LLC*, 222 F. Supp. 3d 504, at 514 (W.D. Va. 2016) (noting that "the use of excessively vague time descriptions is a generally disfavored billing practice [because] [s]uch descriptions inhibit the court's reasonableness

19

view") (internal citations omitted). To account for these insufficient descriptions, the Court will further reduce the Center's claimed hours by an additional 25%. Thus, the Court will award fees of 50% of the claimed hours—that is, 44.4 hours. The following chart summarizes the Court's hours and rate adjustments as discussed above.

| Plaintiff's Billed Hours | Court's Adjusted Hours (50%) | Plaintiff's Requested Hourly Rate | Court's Adjusted Rate | Court Awarded Fees |
|---|---|---|---|---|
| 88.8 | 44.4 | $620 | $475.00 | $21,090.00 |

At bottom, the Center is entitled to $21,090 in fees.

## II.   Costs

While USCIS opposes the Center's request for costs of $402, noting "Plaintiff's Complaint is simply a boilerplate template of the various Complaints [the Center] has filed against USCIS in Maryland and in the District of Columbia," (ECF No. 18-1 at 23), the Court will GRANT the Center's request for costs of $402.

## CONCLUSION

For the reasons stated above, the Court will GRANT IN PART and DENY IN PART the Center's Motion for an Award of Attorneys Fees and Costs (ECF No. 17) is GRANTED IN PART and DENIED IN PART. Specifically, attorney's fees and costs are awarded to the Center in the amounts of $21,090 and $402, respectively.

A separate Order follows.

Date: August 28, 2024                                                 /s/
                                                                                Richard D. Bennett
                                                                                United States Senior District Judge